days' notice to rat-proof shall be given or served.

The city of New Orleans is provided with officers for giving official notice; we do not see what more by way of notice a property holder could need than a notice emanating from, and served upon him by, them.

[10] Next, it is said that bubonic plague is a contagious disease which might spread beyond the limits of the city, and which is therefore a state-wide affair, and as such is cognizable only by the state board of health.

Here again is a point which we do not think needs discussion.

Judgment affirmed.

SOMMERVILLE and O'NIELL, JJ., take no part.

═══════

(71 South. 862)

No. 20513.

JONES v. TREMONT LUMBER CO.

(April 24, 1916. Rehearing Denied May 22, 1916.)

*(Syllabus by the Court.)*

1. RAILROADS  ⬉95(1)—CONSTRUCTION—OBSTRUCTION OF HIGHWAY.

In crossing public roads it is the statutory duty of railroads and tramways to construct their roads so as not to hinder, impede, or obstruct the safe and convenient use of the highway. Act No. 157 of 1910.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 274; Dec. Dig. ⬉95(1).]

*(Additional Syllabus by Editorial Staff.)*

2. RAILROADS  ⬉348(2)—CONSTRUCTION—LIABILITY FOR INJURIES.

In an action against a lumber company for injuries from a fall of plaintiff's horse, which he was riding, into a pit dug by defendant in constructing a tramroad, evidence *held* to show that the pit was dug in the highway.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1139; Dec. Dig. ⬉348(2).]

3. DAMAGES  ⬉132(1)—EXCESSIVE DAMAGES—PERSONAL INJURIES.

An award of $1,500 damages for a dislocated shoulder and subsequent pain and suffer-

ing to a man in the prime of life is excessive, and will be reduced to $1,000.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 372; Dec. Dig. ☞132(1).]

Appeal from Fifth Judicial District Court, Parish of Jackson; Cas Moss, Judge.

Action by A. D. Jones against the Tremont Lumber Company. From a judgment for plaintiff, defendant appeals. Modified and affirmed.

The following is the plat referred to in opinion:

Grisham & Oglesby, of Winnfield, and Stubbs & Theus, of Monroe, for appellant.

Wimberly & Dormon, of Shreveport, for appellee.

LAND, J. Plaintiff sued defendant for $5,000 damages for personal injuries, alleged to have been sustained under the following circumstances:

Defendant constructed a dump or embankment upon a certain public road in the parish of Jackson for the purpose of building a log tramroad, and in so doing dug a deep hole in said road, in such a way and place that it could not readily be seen by the traveling public. The work was done carelessly and without proper consideration for the safety of the traveling public.

On or about August 5, 1913, plaintiff, while riding horseback on said road, suddenly came upon said dump, and in crossing same came upon said hole, too late to guide his horse away from it, and the horse and the rider fell into said hole, and in so falling plaintiff was thrown against the ground, and his shoulder fractured and dislocated, and his back and spine injured, causing him to lose three months' time, and inflicting on him injuries from which he will never permanently recover.

Plaintiff also sued for the additional sum of $750 for loss of time, and the further sum of $1,000 as exemplary or punitive damages for defendant's alleged willful, malicious, and wanton disregard of public rights and trespass and interference with said public road.

Defendant for answer admits the construction of a tramroad over certain lands in the parish of Jackson, and that said tramroad crosses the Ruston and Western road; for want of sufficient information to justify a belief, defendant denies that said road is a public road, but says that in order to carry on its business it was necessary to construct said tramroad across said road; at the place of the alleged injury the ground is level, and defendant there constructed a dump

1¹/₁₆ feet high with perfect approaches to said dump, the width of the alleged public road.

Further answering defendant denied that it dug a deep hole or any other kind of hole in the said road, and averred that what holes were dug were on either side of the road not in close proximity to the dirt road and plainly visible to the traveling public; denied that the construction of the tramroad at that place was an interference with the public road, or in violation of any law; and averred that defendant left the road in as good condition as it found it.

The case was taken up before the judge alone, and after the examination of a score or more of witnesses was submitted, and judgment was rendered in favor of the plaintiff for $1,500, with 5 per cent. interest thereon from the date of its rendition, and all costs of suit. Defendant has appealed.

The objection of defendant to testimony to support the demand for permanent injuries, or injuries of any kind, or for pain and suffering, for want of sufficient allegations, was properly overruled. The petition sets forth the nature of the injuries received, and the resulting pain and suffering, and loss of time, and alleges that plaintiff will never permanently recover therefrom.

Defendant's counsel in their brief say that the issues as made up present two questions for determination:

"(1) Was the crossing made in such a way that the defendant would be liable, provided the plaintiff was not at fault and did not contribute to his injury?
"(2) Was not the injury to plaintiff contributed to and caused by his own fault, negligence, and carelessness."

[1] It was the duty of the defendant to construct its works so as not to hinder, impede, or obstruct the safe and convenient use of the highway. Act No. 157 of 1910,

amending section 691 of the Revised Statutes of 1870.

Defendant contends that it had constructed a good and safe crossing over its tramroad, but that plaintiff elected not to make use of it, and turning to the right attempted to cross the tramroad at a point beyond the crossing as filled and graded for public travel, and in so doing his horse stepped into one of the barrow pits and fell; and that said pit, some four feet wide and two feet deep, was an open and visible obstruction, which should have been seen and avoided by the plaintiff in the exercise of ordinary care.

Plaintiff contends that the hole or pit was in the public road or the "old road," as it is called by the witnesses, to distinguish it from the road opened after the accident, and that it was dug in such a way that it could not be seen by a person coming from the west or north, going toward the east or south before it was too late to avoid going into it.

We attach hereto, for the sake of illustration, a plat of the locus in quo, as printed in defendant's brief. The accuracy of the plat in some particulars is disputed by the plaintiff.

[2] After an attentive consideration of all the evidence in the record, we think that it is fairly proven that the hole into which plaintiff's horse stepped was a barrow pit dug by the defendant's employés, in the Ruston & Western road, which was the only one in public use at the time of the accident. The "old road" had been abandoned, and the "new road" was opened after the accident. As shown by the plat the railroad dump or roadbed crossed the public road diagonally, at a point where the latter commenced to curve to the right. The roadbed was constructed with earth taken from barrow pits on each side of the tramway. There is positive testimony in the record that the incline

or approach on the east or south did not follow the curve of the Ruston & Western road. The result was that a portion of said road was excluded from the approach; and in this portion, witnesses for the plaintiff locate the hole or pit, which caused the accident in question. The witness Cline Ford, quoted in defendant's brief, and overseer of the road in question at the time of the accident, testified that the hole or pit was in the public road. The situation just before and after the accident seems to have been, as described by several witnesses, such as to compel the traveler to cross, or go around this barrow pit in order to continue his journey along the Ruston & Western road.

The case on the plea of contributory negligence is more doubtful, but we are not prepared to say that the trial judge, on the evidence before him, erred in finding the plaintiff not guilty.

[3] We, however, consider the award as excessive. A dislocated shoulder is a minor injury, and the consequent pain and suffering to a man in the prime of life is of no great severity. The testimony of the surgeons show no permanent injury to the shoulder. One of them found an efficiency of 85 per cent., and another an efficiency of 95 per cent. Considering the elements of pain, suffering, and loss of time claimed in the petition, we are of opinion that an award of $1,000 is sufficient compensation. In Smith v. Minden Lumber Co., 114 La. 1035, 38 South. 821, this court refused to increase an award of $1,500 for a broken arm and dislocated shoulder. While there is no standard for the measurement of damages in a case like this, there should be some regard for uniformity.

It is therefore ordered that the amount of the judgment below be reduced from $1,500 to $1,000, and that as thus amended be affirmed; plaintiff to pay costs of appeal.