ALEXANDER v. THE STANDARD
COFFEE CO., INC.

———

(April 13, 1931.  Opinion and Decree.)

———

F. A. Middleton and Chas. J. Larkin, Jr., of New Orleans, attorneys for plaintiff, appellee.

Henry & Cooper and John A. Smith, Jr., of New Orleans, attorneys for defendant, appellant.

JANVIER, J. Plaintiff, a colored woman, received injuries as the result of an accident in which either she was struck by or she walked into the side of an automobile truck owned by defendant and driven by one of its employees, who, at the time, was admittedly acting within the scope of his employment.

The truck was proceeding alongside the paved road known as the Jefferson Highway, and plaintiff, walking along the road near the right-hand edge thereof, was proceeding in the same direction.

Across the highway, just ahead of the truck and plaintiff, was a switch track of a railroad company, on which track was a locomotive which had approached from the right side of the road and which had been brought to a stop, so that the switchman might "flag the crossing," in order that the locomotive might proceed across without danger to persons and vehicles on the highway.

Plaintiff and the driver of the truck saw the switchman, and, realizing that, if the engine should proceed and should block the crossing, they would, to some extent, be delayed, hurried in an effort to cross before the locomotive could do so.

Plaintiff was struck and knocked down by the truck, or she walked into the side of the truck and was knocked down, and received injuries of which she now complains.

She avers that the truck struck her from the rear and without any warning of its approach.

Defendant maintains that, just as the truck was abreast of plaintiff, she, seeing that she might not clear the front end of the locomotive if she continued on her course straight ahead, suddenly darted to her left in an effort to pass, and, in doing so, ran into the right side of the truck, after the front end thereof had already passed her.

The district judge felt that defendant's chauffeur was entirely to blame for the accident and rendered judgment in favor of plaintiff for $1,000. Defendant has appealed.

The evidence leaves no room for doubt that plaintiff either veered or ran slightly to her left just as the automobile was abreast of her, and that, had she not done so, there would have been no accident. But it also convinces us that the driver of the truck saw plaintiff; that he realized that she was endeavoring to do just what he himself proposed—to "beat the train" across. He should have realized that, as the train was approaching from the right, and as there was danger of plaintiff's veering to the left, just as she did do, an emergency might be created. Therefore, as he was approaching from plaintiff's rear, he should have moderated his speed to an extent which would have made it possible for him to stop immediately, and should have given warning of his approach.

It was to eliminate the danger of just such situations that the Legislature of this state included in Act No. 120 of 1921 (Ex. Sess.) section 17 thereof. The pertinent portion of that section reads as follows:

"Upon approaching any pedestrian who is upon the traveled portion of any highway or road * * * every person operating a motor vehicle shall slow down and give a timely signal with his gong or other device for signaling. * * *"

In Kelly v. Ludlum, 9 La. App. 57, 118 So. 781, a case involving facts strikingly similar, the Court of Appeal for the Second Circuit held defendant liable, although in that case defendant's chauffeur actually gave the warning signal required by the statute to which we have referred. The facts of that case, as stated by the court, were so similar to those presented here that we shall quote them as stated in the opinion:

"Plaintiff, B. E. Kelly, while walking along the highway in the daytime, was struck and injured by an automobile which approached from his rear, and in this action, brought against the owner of the automobile, J. W. Ludlum (who was riding in the automobile, which was at the time being driven by his chauffeur) to recover damages, judgment was rendered rejecting plaintiff's demands, from which he appeals.

"The evidence establishes that plaintiff was walking along the right side of the roadway and that the automobile was being driven on the same side in such relative position to that of plaintiff that, if each had continued their courses without deviation the automobile would have passed plaintiff by a margin of about 1½ feet, and that the driver of the automobile sounded the horn as the automobile approached (of which plaintiff did not take any apparent notice and which he claims not to have heard) but did not change the course of the automobile until about the moment of the collision, when plaintiff

deviated from his course about 2 feet, thus placing himself in front of the automobile, when the driver of the automobile vainly attempted to avoid striking him by changing its course."

In Baquie v. Meraux, 11 La. App. 368, 123 So. 338, 339, is found another case involving the legal principles now under consideration, and in that case we said:

"When the driver of an automobile sees four pedestrians walking along the highway in front of him, it is his duty to take extraordinary care to prevent injuring them, and he must take reasonable precautions to make certain that the pedestrians are aware of his approach. The duty of care rests more heavily upon the motorist than the pedestrian. The degree of care necessary to be exercised must be commensurate with the danger involved."

In Berry on Automobiles, Sixth Edition, vol. 1, page 293, appears the following:

"The rule of reasonable precaution which the law enjoins upon a driver of an automobile upon a public highway includes the necessity of making certain that foot passengers are aware of the rearward approach of the vehicle; that the vehicle itself is at such a distance from the pedestrian as to avoid running over him in his sudden panic from surprise at knowledge of its unexpected approach; and finally, that the vehicle is under such control as that it may be stopped promptly."

Since the accident in this case happened in what may be termed the open country, it may be of interest to note that we have discussed the relative rights of automobile drivers and pedestrians in such localities, and that in this connection, in Jacoby et ux. v. Gallaher, 10 La. App. 43, 120 So. 888, 889, we said:

"In the country the public roadway is shared by vehicles and pedestrians, and there is no impropriety, nor is there any negligence implied, in the practice of country residents walking along the side of the road. The highway is intended for their use as well as for the use of automobiles. Consequently, when a motorist observes pedestrians on the roadway, he must be careful not to injure them. It is his duty to give warning of his approach and to keep his automobile under control. This is true, in the case of adults, but in the case of children extraordinary precaution is necessary."

The various cases to which our attention is called by defendant's counsel do not appear to us to be in point, since practically all of them grew out of accidents in which the injured parties stepped from a sidewalk alongside a city street into the roadway and into the path of approaching automobiles. We do not think such situations are analogous to the one presented here.

Defendant's driver was guilty of negligence in not sounding his horn and in approaching plaintiff from the rear at too great a speed, and that negligence was the proximate cause of the accident. Defendant is liable.

We feel, however, that the amount awarded is in excess of what is justified by the extent of the injuries sustained. No good purpose can be served by an extended discussion of the various cases involving similar injuries. We are convinced that nothing more than brush burns and temporary bruises were sustained by plaintiff, and that the period of disability was very slight. For such injuries we think $350 ample.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended by reducing the amount thereof to the sum of $350, and, as thus amended, it is affirmed; plaintiff and appellee to pay costs of appeal.